United States District Court
Southern District of Texas

**ENTERED**

June 11, 2019

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| REUBEN WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-3342 |
| | § | |
| CITY OF HOUSTON, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Reuben Williams and Houston Police Department Officer Salvador R. Corral crossed paths while Williams was in the Houston City Jail on a misdemeanor charge of suspicion of driving while intoxicated. (Docket Entry No. 20). Williams has sued the City of Houston and Officer Corral, alleging Fourth and Fourteenth Amendment violations and asserting state-law claims for assault and battery. (*Id.* at 4–5). In April 2007, this civil case was stayed pending the disposition of the misdemeanor charge. (Docket Entry Nos. 24, 26). That charge was dismissed, this court lifted the stay, and after discovery, the City and Officer Corral moved for summary judgment and to exclude an expert opinion Williams submitted. (Docket Entry Nos. 54, 55, 58, 65, 67). Counsel for both sides argued the motions at a hearing.

Based on the motions, the responses, the record, the applicable law, and counsels' arguments, the court excludes the expert opinion, grants summary judgment for the City, and grants in part and denies in part summary judgment for Officer Corral. Summary judgment is granted on Williams' malicious-prosecution claim. His Fourth and Fourteenth Amendment claims based on excessive use of force and his state-law claims for assault and battery remain. A status and scheduling conference is set for **July 12, 2019**, at 8:30 a.m. in Courtroom 11-B.

The reasons for these rulings are explained in detail below.

## I.      Background: The Summary Judgment Record

Houston Police Department Officer Erin M. Swift arrested Williams for suspicion of driving while intoxicated on November 8, 2014.  Williams was taken to the City Jail because he refused a field-sobriety test.  (Docket Entry No. 20 at 2; Docket Entry No. 56-5).  Officer Swift reported that Williams spat and urinated inside the patrol car and was combative on the way to the Jail.  (*Id*. at 4).  Once there, Officer Swift got a warrant for a blood test and asked Officer Corral to help take Williams from the holding cell to the room where the blood test would be done.  (*Id*.).  Williams resisted the blood test, and the officers forcibly placed his arm in the strap.  Williams was shouting racial slurs and kicking his feet at the officers to keep them away.  When Officer Corral put his forearm across Williams's upper chest to keep him from moving, Williams yelled, "I can't breathe!"  (*Id*.).  The nurse was able to take the blood sample.

After the blood draw, Officer Corral handcuffed him and took him back to the holding cell.  Officers J. Little, P. McRae, A. Garcia, and D. Matthews followed.  Officer Corral testified that, on their way back to the holding cell, Williams was verbally abusive and spat on Officer Corral's face, neck, and left shoulder.  (Docket Entry No. 60-4 at 3).  Williams disputes this, describing his behavior as compliant and emphasizing that he was handcuffed.  (Docket Entry No. 65, Ex. 7).

A video recording taken by the Jail hallway surveillance camera shows that Williams stopped at the holding-cell door.  Officer Corral shoved Williams's head into the steel doorframe, cutting his forehead and injuring his right eye.  (Docket Entry No. 68, Ex. 2).  A camera inside the holding cell recorded that after his head hitting the doorframe, Williams turned back toward Officer Corral with his mouth open.  It is unclear whether Williams was talking, preparing to spit, or simply had his mouth open.  When Williams turned his body and head back toward Officer

2

Corral, the officer put Williams's neck in a chokehold and pushed him against the wall.  When Officer Corral released the chokehold, Williams fell to the floor with blood on his face.  (Docket Entry No. 60-4 at 3).

Officer Corral testified that he pushed Williams's head away from him into the doorframe; and then held Williams against the wall, because he believed that Williams was about to spit on him again.  (*Id.*).  Williams disputes this, arguing that the videotapes show that when Officer Corral pushed his head into the steel doorframe and then shoved him against the holding-cell wall, he was standing in front of Officer Corral and facing away from him, making it impossible for him to spit on the officer.

After Officer Corral released Williams, he laid on the floor.  Officer Corral testified that he tried to get Williams to sit up, but Williams resisted by kicking and yelling.  (*Id.*).  Williams disputes this, claiming that he lost consciousness and collapsed onto the floor.  (Docket Entry No. 65, Ex. 7).

Officer Little called the Houston Fire Department's Emergency Medical Services and notified Sergeant S. R. Sorge of the incident.  (Docket Entry No. 60-6 at 3–4).  EMS staff cleaned and bandaged Williams's cut.  (Docket Entry No. 60-4 at 5).  Williams told the medical personnel that he was HIV positive.  (*Id.*).  Williams was taken to the hospital, where, according to Officer Swift and Officer Corral, he continued spitting and cursing at medical staff and at police officers. (*Id.*; Docket Entry No. 60-5 at 5).

After the incident, Williams was indicted for harassing a public servant by spitting. (Docket Entry No. 54 at 9).  The charge was dismissed after Williams was convicted for another crime.  (Docket Entry No. 65, Ex. 4).  Officer Corral was criminally investigated, but a grand jury declined to indict him.  The City's internal investigation found that Officer Corral did not act

reasonably when he pushed Williams's head into the doorframe and ordered Official Corral to get counseling.  (Docket Entry No. 60-1 at 7).

This lawsuit against the City and Officer Corral, for violations of the Fourth and Fourteenth Amendments and for state-law claims for assault and battery, followed.  (Docket Entry No. 1). After discovery, the City and Officer Corral moved for summary judgment and to exclude the expert opinion Williams submitted.  (Docket Entries No. 54, 56, 58).  Williams responded, and the court heard oral argument.  (Docket Entry No. 65).

## II.    The Applicable Legal Standards

### A.    Summary Judgment

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted); *see also* FED. R. CIV. P. 56(a).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'"  *Nola Spice Designs, LLC v. Haydel Enter., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'"  *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs*, 783 F.3d at 536).  While the movant must

demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)).  A fact is material if it "might affect the outcome of the suit."  *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 248).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Jones v. Anderson*, 721 F. App'x 333, 335 (5th Cir. 2018) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Infante v. Law Office of Joseph Onwuteaka, P.C.*, 735 F. App'x 839, 843 (5th Cir. 2018) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Wease v. Ocwen Loan Servicing, LLC*, 915 F.3d 987, 992 (5th Cir. 2019).

### B.    Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and it "protects 'all but the plainly incompetent or those who knowingly violate the

law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Courts undertake a two-step analysis in reviewing a motion for summary judgment based on qualified immunity. *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014). "First, [courts] ask whether the facts, taken in the light most favorable to the plaintiffs, show the officer's conduct violated a federal constitutional or statutory right." *Id*. (citing *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014)). "Second, [courts] ask 'whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id*. (quoting *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)). The court has discretion to decide which prong to consider first. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). To defeat qualified immunity, a plaintiff must demonstrate that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Qualified-immunity claims must be evaluated in the light of what the officer knew at the time he acted, not on facts discovered subsequently. *Luna*, 773 F.3d at 718. As to whether the law at time of an incident was clearly established, the court must define each alleged right at an appropriate level of specificity. *Stanton v. Sims*, 571 U.S. 3, 6 (2013). While "a case directly on point" is unnecessary, the "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (quoting *al-Kidd*, 563 U.S. at 741).

At summary judgment, courts must resolve genuine factual disputes in favor of the nonmovant. *Tolan*, 572 U.S. at 656–57 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A district court may not grant summary judgment based on qualified immunity if "resolution of [qualified immunity] . . . turns on what the defendant actually did," and the plaintiff's version of the story would defeat the qualified-immunity defense. *See Haverda v. Hays Cty.*, 723 F.3d 586,

599 (5th Cir. 2013) (quotation omitted).  Summary judgment may still be appropriate "based on a plaintiff's inability to [raise other factual issues material] to recovery," but "this has nothing to do with the qualified immunity defense."  *Id*.  When videotape evidence is available, however, a court is not required to adopt the plaintiff's version of facts if the plaintiff's story "is blatantly contradicted by the [video] record, so that no reasonable jury could believe it."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) ("Although courts view evidence in the light most favorable to the nonmoving party, they give greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." (citing *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)).

### C.    Municipal Liability

"Municipalities are persons susceptible to suit under § 1983, but they cannot be found liable on a theory of vicarious liability or respondeat superior."  *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978).  Rather, the municipality itself must have caused the violation.  *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018).  Municipal liability requires proof of a constitutional violation, that a municipal policymaker promulgated an official policy, and that the policy was the moving force behind the constitutional violation.  *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).

### III.   The Parties' Summary Judgment Evidence

### A.    The Defendants

The City and Officer Corral submitted the following evidence:

- Exhibit A: HPD-IAD Investigation Summary for Williams's incident;
- Exhibit B: HPD-IAD Investigation Report for Williams's incident;
- Exhibit C: Counseling Memo for Officer Corral;
- Exhibit D: Officer Corral's Certification Record;

- Exhibit E:  HPD Offense Report;
- Exhibit F:  Officer Corral's sworn statement to HPD-Homicide Division;
- Exhibit G: Officer Swift's sworn statement to HPD-Homicide Division;
- Exhibit H: Officer Little's sworn statement to HPD-Homicide Division;
- Exhibit I:  Expert report of John G. Peters;
- Exhibit J:  Video recording of events at issue—produced on CD to the Court;
- Exhibit K: Affidavit of Officer Corral.

(Docket Entry No. 58 at 9–10).

The City also submitted Houston Police Department General Orders, including:

- Exhibit K: General Order 600-17;
- Exhibit L:  General Order 500-20;
- Exhibit L:  General Order 200-08.

(Docket Entry No. 54 at 9–10).

Williams submitted the following:

- Exhibit 1:  Video recording of Williams's incident taken in the hallway;
- Exhibit 2:  Video recording of Williams's incident taken in the holding cell;
- Exhibit 3:  Excerpt of HPD-IAD Investigation Report for Williams's incident;
- Exhibit 4:  Motion to dismiss based on Williams's criminal conviction;
- Exhibit 5:  Video recordings of other prisoners at the City of Houston Jail;
- Exhibit 6:  HPD-IAD Investigation Summary excerpt for Williams's incident;
- Exhibit 7:  Declaration of Williams.

(Docket Entry No. 65).  Williams's expert, Roger Clark, submitted a report of his opinions under

Federal Rule of Evidence 702.  (Docket Entry No. 67, Ex. 1).

### B.    The City's and Officer Corral's Motion to Strike the Expert Testimony

### 1.    Roger Clark's Report

Williams retained Roger Clark, a retired Los Angeles County Sheriff's Department officer,

to opine on the City of Houston's police training, the Texas Commission on Law Enforcement

standards for using force, and the Houston Police Department's procedures relating to

investigating excessive-force claims and disciplining officers found to have used excessive force.

(Docket Entry No. 67, Ex. 1, at 7–8).  According to Williams, Clark has been retained as a

consultant in more than 1,750 cases and has expertise in police officers' use of force, jail procedures and administration, and police procedures and tactics. (Docket Entry No. 67-1 at 11). Clark's report describes his review of Williams's complaint, the video recordings, the Texas Commission on Law Enforcement website, and other use-of-force instances in the Jail. (*see id.*).

Under Federal Rule of Evidence 702, a witness may provide expert testimony if his or her "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; the testimony "is based upon sufficient facts or data" and is "the product of reliable principles and methods"; and "the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579 (1993). "In *Daubert*, the Supreme Court explained that Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (per curiam) (quotation omitted). The party offering the expert opinion must establish admissibility by a preponderance of the evidence. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016); *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 385 (5th Cir. 2009).

Clark's report states:

Throughout the country, law enforcement officers are trained regarding the methods and means of response when dealing with prisoners in their custody. . . . Officer Corral violated policy, law, and Mr. William's constitutional rights.

There is nothing in the video that supports any attempt by Mr. Williams to spit on Officer Corral. In my opinion, it supports . . . that Officer Corral deliberately and without any justification, forcefully shoved [Williams] . . . into the steel frame of the cell door. . . . Officers are trained [to know] that . . . such conduct . . . would rise to the level of criminal conduct.

[The] apparent excessive use of police powers as recorded by the Jail surveillance video . . . indicates that the customs and practices of the Houston Police Department

encourage their Officers to ignore [Texas Commission on Law Enforcement] standards . . .[and] to violate Mr. William's constitutional rights.

[T]here appears to be a pattern and practice of using excessive force on inmates at the Houston City Jail.

[It] appears that the Houston Police Department has stamped its approval of Officer Corral's actions and supports the reckless approach to unarmed and compliant citizens. [I]t is likely that more citizens will be subjected to similar unconstitutional searches and unconstitutional detainment as the result of [the City]'s slacked policies.

There are indications in this incident that the Houston Police Department fosters an environment which allowed [police officers] to depart from policy and law and to use their police powers to violate the civil rights of the citizens they have sworn to protect, which is in violation [of the] policy, law, and [the Texas Commission on Law Enforcement] standards.

(Docket Entry No. 67-1 at 7–8).

An expert's legal opinions are inadmissible.  *See Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999).  In the context of the Fourth and Fourteenth Amendments, an expert cannot offer legal conclusions on whether an officer's use of force was reasonable or not.  *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003); *McBroom v. Payne*, 478 F. App'x 196, 199 (5th Cir. 2012); *Frakes v. Masden*, No. H-14-1753, 2015 WL 7583051, at *4 (S.D. Tex. Nov. 25, 2015).  Clark's opinions that Officer Corral used excessive force, his conduct was criminal, he acted deliberately and without justification, and he violated Williams's constitutional rights, are excluded because they are legal conclusions.  *See Williams*, 343 F.3d at 435; *McBroom*, 478 F. App'x at 199.

Paragraphs 3, 5, and 6 of Clark's report discuss the Houston Police Department's customs and practices, which Clark asserts are so established as to be the City's policies.  Clark opines that the Police Department adopted a custom or practice amounting to a policy of encouraging officers to ignore arrestees' constitutional rights, approved or ratified Officer Corral's allegedly excessive

10

use of force, and adopted a reckless approach to using force against unarmed citizens.  (Docket Entry No. 67, Ex. 1, at 7–8).  Whether the evidence shows a pattern of excessive force that supports finding that the City had a custom or practice of encouraging officers to use excessive force against arrestees or pretrial detainees, or that the City was on notice of a pattern of officers using unconstitutionally excessive force, is a legal question for the court.  *Smith v. City of Wiggins*, No. 14-cv-26-HSO-RHW, 2015 WL 6872230, at *11 n.6 (N.D. Miss. Nov. 9, 2015) (citing *Peterson v. City of Fort Worth*, 588 F. 3d 838, 850 (5th Cir. 2009)); *see also Estate of Sowell v. United States*, 198 F.3d 169, 171–72 (5th Cir. 1999).  Clark's testimony that the City had a custom or practice of encouraging officers to use excessive force against arrestees and pretrial detainees, and that the City knew of a prior pattern, is an inadmissible legal opinion.

Clark also opines about what the videotapes show, which is information within a factfinder's lay knowledge and does not require specialized knowledge, training, or education.  While experience may make it easier or faster for Clark to describe the events captured by the videotapes, that does not make him uniquely helpful to the finder of fact.  *See, e.g.*, *Anderson v. City of McComb*, 539 F. App'x 385, 388 (5th Cir. 2013) (the expert opinions were not considered because they "amounted to no more than the [expert's] personal interpretation of the evidence that the jury would hear and the [expert's] conclusions on the ultimate issues in the case"); *Garcia v. Mendeke*, No. DR:15-cv-70-AM-CW, 2016 WL 8739854, at *3 (W.D. Tex. Sept. 30, 2016); *Brown v. Gulfport Police Dep't.*, No.1:10-cv-405LG-RHW, 2012 WL 1898913, at *5 (S.D. Miss. May 23, 2012).  These opinions are inadmissible.

Clark's expert report otherwise consists of conclusions about the City's policies, without analysis.  Such conclusory statements are unhelpful and inadmissible.  The City and Officer Corral's motion to strike Clark's Rule 702 report, (Docket Entry No. 55), is granted.

### 2.    Williams's Declaration

Williams's Exhibit 7 is his own declaration describing the incident.  (Docket Entry No. 65, Ex. 7).  The City and Officer Corral seek to exclude the declaration, arguing that it contains conclusory statements unsupported by admissible evidence and that it is unfairly prejudicial in ways that substantially outweigh its probative value.  (Docket Entry No. 70 at 3).

Williams states that he was escorted in handcuffs to the holding cell by Officer Corral, walking behind him and holding his arms.  According to Williams, before entering the holding cell, he was cooperative, not resisting or combative, and he did not spit on the officers or turn toward them.  When he stepped into the cell, Officer Corral slammed his head into the steel doorframe, without warning or reason, cutting his head and right eye and causing extreme pain.  Williams states that Officer Corral then put him in a chokehold and pushed him against the wall, after which he lost consciousness and collapsed onto the floor.

A party's own affidavit or declaration may be admissible summary judgment evidence if it is based on personal knowledge and contains specific factual assertions, even if the affidavit is self-serving.  *C. R. Pittman Const. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) (per curiam); *Wilkins v. Deutsche Bank Nat'l Tr. Co.*, No. H-18-3466, 2019 WL 366701, at *4 (S.D. Tex. Jan. 30, 2019).  But an "attempt to create a fact issue" by "relying on a conclusory and self-serving affidavit is on unsteady ground."  *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 & n.49 (5th Cir. 2005).  Conclusory self-serving declarations, without more, often "will not defeat a motion for summary judgment."  *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 F. App'x 306, 309 (5th Cir. 2011); *see also Spencer v. FEI, Inc.*, 725 F. App'x 263, 268 (5th Cir. 2018); *Ray v. Geo Grp., Inc.*, 547 F. App'x 443, 446 (5th Cir. 2013).  And, importantly, a court is

not required to view a nonmovant's self-serving statements favorably if they are "blatantly contradicted by the video record." *Scott*, 550 U.S. at 380; *Griggs*, 841 F.3d at 312.

Williams's declaration contains factual statements based on his personal knowledge. He claims that when he was escorted into the holding cell, he did not spit at Officer Corral or turn toward him in order to do so. Williams also states that he was not resisting, spitting at, or turning to spit at Officer Corral when the officer shoved him against the wall in a neck chokehold. (Docket Entry No. 65, Ex. 7, ¶ 5). These statements are admissible, but to the extent they are conclusory and unsupported by other admissible evidence, they may not defeat the defendants' motions for summary judgment. *DIRECTV*, 420 F. 3d at 531 & n.49; *Tyler*, 426 F. App'x at 309; *Spencer*, 725 F. App'x at 268. As explained further below, the video recording of the events does not so clearly or directly conflict with Williams's descriptions as to require excluding his declaration. The motion to strike Williams's declaration is denied.

### 3.    The Houston Police Department Internal Investigation Report

Williams's Exhibit 6 is an excerpt of the Houston Police Department Internal Affairs Division's investigation report summarizing the incident. (Docket Entry No. 65, Ex. 6). The City and Officer Corral moved to exclude this evidence, arguing that the excerpt is incomplete and therefore misleading.

The City filed the entire investigation report under seal. (Docket Entry No. 56-1). The report details Williams's and Officer Corral's activities. The investigation found no evidence that Officer Corral acted intentionally or out of malice, and that there was no misconduct or mishandling of Williams's case. But the City did find that Officer Corral failed to account for the surroundings and for Williams's safety when pushing his head away and into the metal doorframe. The City ordered Officer Corral to receive counseling. (Docket Entry No. 56-1, at 6–7).

Because the court has received and considered the entire investigation summary, the motion to strike Williams's Exhibit 6 is denied.

### 4.    The Video Recordings of Williams's Incident

Williams submitted two videotaped clips showing Officer Corral's use of force against him, taken by the hallway and the holding-cell surveillance cameras.  The City and Officer Corral moved to exclude these videotaped clips based on late production.  (Docket Entry No. 73 at 2–3).  At the March 2019 hearing, the court ordered Williams to send the defendants a copy of the videotaped clips he intended to rely on.  The City and Officer Corral then submitted a supplemental brief on optional completeness, arguing that these clips should be excluded because they were incomplete and did not "depict [Williams]'s demeanor from the time of his arrest to the use of force event at issue."  (Docket Entry No. 73 at 2).  The City and Officer Corral then submitted the videotaped clips taken in Officer Swift's patrol car, the blood-draw room, the Jail hallway, and the holding cell.  (Docket Entry No. 58-10).  The court has considered all these videotaped clips.  The motion to exclude some of the videotaped clips is denied.

### 5.    The Video Recordings of Other Incidents

Williams also submitted videotaped clips of police-officer interactions with other arrestees and pretrial detainees, alleging that the officers shown in those recordings had used excessive force.  (Docket Entry No. 65, Exs. 1, 2, 5).  The City and Officer Corral ask the court to exclude these videotaped clips.  (Docket Entry No. 73 at 2–3).  The City argues that Williams fails to authenticate or provide an adequate foundation to admit these videotaped clips, by, for example, submitting an affidavit or other summary judgment evidence identifying the source, the content, the participants, and the relevance to the current case.  (*Id*.).  According to the City and Officer Corral, these videotaped clips cannot provide a complete or accurate picture of the incidents they

depict, and none shows similar circumstances involving an arrestee who had resisted arrest, been physically combative and verbally abusive, resisted a blood draw, or cursed at and spat on the officers. (*Id.*). Williams responded that these video recordings are "complete" because the City produced them and he submitted them to the court as produced.

Summary judgment evidence need not be in the admissible form required for trial. *See* FED. R. CIV. P. 56(c); *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017); *Gomez v. Ford Motor Co.*, No. 5:15-cv-866-DAE, 2018 WL 3603119, at *2 (W.D. Tex. Feb. 5, 2018). The court does not strike these videotaped clips from the record, but they do not support the relief Williams seeks or preclude summary judgment. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *United States v. Renda Marine, Inc.*, 667 F.3d 651, 655 (5th Cir. 2012) (quoting *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003)). These videotaped clips of parts of other incidents, occurring in dissimilar circumstances and involving other kinds of force, cannot support Williams's allegations that the City had a policy, practice, or custom of encouraging officers to use unconstitutionally excessive force, or that the City had a prior notice of a pattern of unconstitutional uses of force, in circumstances similar to Williams's interactions with Officer Corral. *See Franklin v. Doyle*, No.1-09-cv-931, 2012 WL 2715694, at *15 (E.D. Tex. July 9, 2012) (considering the plaintiff's video recording of other use-of-force incidents but granting summary judgment for the municipality because the video recording could not raise factual disputes material to finding a prior pattern of constitutional violations in similar circumstances).

## IV.    The Claims Against Officer Corral

### A.    The Excessive-Force Claims Under the Fourth and Fourteenth Amendments

To show excessive force violating the Fourth Amendment, a plaintiff "must demonstrate: (1) [an] injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Pratt v. Harris Cty.*, 822 F.3d 174, 181 (5th Cir. 2016) (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir. 2017) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)). "Factors to consider include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.*

The Due Process Clause of the Fourteenth Amendment protects an arrestee or pretrial detainee from excessive force that amounts to punishment. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). Excessive force that violates the Fourteenth Amendment requires showing: (1) an action taken with an expressed intent to punish; (2) not "rationally related to a legitimate nonpunitive governmental purpose; or (3) that "appear[s] excessive in relation to that purpose." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 747 (1987) ("[T]he punitive-regulatory distinction turns on 'whether an alternative purpose to which [the action] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'")). A court applies an

objective-reasonableness standard to determine whether the officer's force was excessive in the circumstances presented.[1]

Police officers "are often forced to make split-second judgments" in circumstances "that are tense, uncertain, and rapidly evolving," and the reasonableness of the force used "must embody allowance" of the amount that is necessary in a particular situation.  *Graham*, 490 U.S. at 396–97.  A court must "adopt the perspective of a reasonable officer on the scene, rather than judge with [a] vision of hindsight."  *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (quotation omitted).  The inquiry is "whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation."  *Id*. (quoting *Graham*, 490 U.S. at 397).  The Supreme Court has provided examples of factors relevant to the reasonableness of force a police officer used, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473.  Significant injury is not required to state an excessive-force claim. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  "[T]he core judicial inquiry" is "whether force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id*. (quoting *Hudson v. McMillian*, 503 U.S.1, 7 (1992)).

Officer Corral argues that although he pushed Williams's head away from him and against the metal doorframe, it was not objectively unreasonable for him to do so under the circumstances,

---

[1] Courts have consistently applied the same objective-reasonableness standard to plaintiffs' excessive-force claims under the Fourth and Fourteenth Amendments. *See, e.g.*, *Graham*, 490 U.S. at 395 (applying the objective-reasonableness standard to claims under the Fourth Amendment and the Due Process clause); *Edrei v. Maguire*, 892 F.3d 525, 534 (2d Cir. 2018) (*Kingsley* adopted an objective-reasonableness standard); *see also Kulpa for Estate of Kulpa v. Cantea*, 708 F. App'x 846, 851 (6th Cir. 2017) (the standards for a Fourteenth Amendment excessive-force claim "mirrors the Fourth Amendment's reasonable standard"); *Johnson v. Conway*, 688 F. App'x 700, 709 (11th Cir. 2017) (same).

because Williams had resisted both his arrest and the blood test, and because he was cursing at, and had spit on, the officers. (Docket Entry No. 58 at 15). Officer Corral contends that spitting is not only abusive and disrespectful, but an unsanitary act likely to spread contagious disease and meant to incite retaliation. (*Id.*).

The City's internal investigation and police officers' administrative reports state that Williams was intoxicated and resistant when Officer Swift pulled him over. (Docket Entry No. 60-1 at 3–7). Officer Swift reported that Williams spat and urinated once inside the patrol car on the way to the Jail. (Docket Entry No. 60-2 at 20–22). At the Jail, Williams resisted the blood test, requiring officers to place his arm in the strap. He uttered racist epithets at the police officers and told the nurse drawing the blood that the only reason he did not spit on her was because his mother was also a nurse. (*Id.* at 25). Officer Corral testified that, on their way back to the holding cell, Williams spat on him. (Docket Entry No. 60-4 at 3). Officer Little observed Williams stopping in the hallway before entering the holding cell and trying to spit on Officer Corral. Officer Morales reported that Williams spat at him and on medical personnel when Williams was sent to the hospital after he was injured. (*Id.* at 27, 37–38).

Williams did not dispute some of the facts the officers described about his actions during the arrest, in Officer Swift's patrol car, or in the blood-draw room. But Williams's declaration states that when he was in the Jail hallway, he was cooperative, was not physically resisting, and was not spitting at the police officers. (Docket Entry No. 65, Ex. 7 at 1). Williams contends that Officer Corral suddenly smashed his head onto the holding cell's metal doorframe for no reason, injuring his forehead and right eye, and then put his neck into a chokehold against the wall until he collapsed to the floor. Pointing to his own declaration and the Houston Police Department's

internal investigation, Williams argues that factual disputes exist as to the reasonableness of the force Officer Corral used under the circumstances confronting him.

The videotaped clip taken in the blood-draw room shows that Williams resisted the blood test and directed a stream of racist epithets at the police officers.  The clip does not show Williams spitting at the officers or the nurse.  The clip taken in the hallway shows Williams being escorted back to the holding cell.  It shows that Williams was handcuffed with his back to the officers, but it also shows that at intervals, Williams turned his face and his head toward the officers, looking up and down, with his mouth open, in ways that could be consistent with talking or preparing to spit.

The hallway videotape clip shows that Williams and the officers stopped in front of the holding cell.  Officer Corral held his arms and pushed him from the back towards the cell door.  The holding-cell videotape clip shows that in front of the cell door, Officer Corral slammed Williams's head against the doorframe.  At that time, Williams had his back toward Officer Corral, and he was not turning toward the officer.  The videotaped clip shows that after his head hit the metal doorframe, Williams stepped into the holding cell.  He then appears to turn his head toward Officer Corral, with his mouth open.  Officer Corral then put Williams's neck into a chokehold and pushed him against the wall.  The holding-cell videotaped clip shows that after Office Corral released Williams, he fell to the ground, then kicked his feet to prevent others from coming close to him.

In sum, it appears that during arrest, in the patrol car, and in the blood-draw room, Williams was abusive and resistant.  The parties do dispute, and the videotaped clips do not resolve, whether Williams was trying to spit at the police officers, particularly when he was in the Jail hallway leading to the holding cell.  The parties dispute whether Williams resisted when he stopped outside

the cell door and whether he tried to spit on Officer Corral again.  The videotape evidence appears to show that when Officer Corral pushed Williams's head against the steel holding-cell doorframe, Williams was under the officers' control, his back was to the officers, his face was away from the officers, and he was not turning toward them.

At summary judgment, the court takes Williams's declaration statements as true to the extent that they are specific, based on his personal knowledge, and are not directly contradicted by the clear videotape evidence.  Williams's statements—that he did not spit at the officers in the hallway; he did not resist and was under Officer Corral's control outside the holding cell; and he was not facing the officers or turning toward them in attempt to spit at them when Officer Corral slammed his head against the metal doorframe—is not inconsistent with the videotape evidence. The videotaped clips do not show Williams spitting at or turning toward the officers during the time leading up to Officer Corral pushing his head into the metal doorframe.  It is less clear whether Williams turned toward Officer Corral after that and before the officer applied the chokehold.

Factual disputes exist material to deciding whether Officer Corral's use of force was excessive or objectively reasonable.  *Cowart v. Erwin*, 837 F.3d 444, 452–53 (5th Cir. 2016) ("[I]t was well-established . . . that officers may not use gratuitous force against a prisoner who has already been subdued."); *see also Rich for Dupuis–Mays v. Palko*, No. 4:16-cv-870, 2018 WL 1309873, at *8 (E.D. Tex. Jan. 8, 2018) (denying summary judgment because the plaintiff provided evidence showing that after he spat, the police officer grabbed him by the head, shoved him to the ground, and slammed his head into a metal file cabinet, causing lacerations to the plaintiff's head).

Although the City and Officer Corral's summary judgment evidence shows that Williams had earlier resisted arrest and the blood test, that resistance could not justify Officer Corral's later use of force if resistance had ceased.  Factual disputes exist material to determining whether the

force used was reasonably necessary to restrain Williams at the holding-cell entrance to prevent him from resisting or spitting again.  *See Curran v. Aleshire*, 800 F.3d 656, 661–62 (5th Cir. 2015) (denying summary judgment based on factual disputes as to whether a police officer used excessive force by slamming a detainee's head into the wall after the detainee had stopped resisting).  The same factual disputes are material to deciding whether Officer Corral is entitled to qualified immunity.  *Id.* at 662–63 (denying the officer's summary judgment motion based on qualified immunity).

The court denies Officer Corral's summary judgment motion on Williams's excessive-force claims under the Fourth and Fourteenth Amendments.

## B.      The State-Law Claims for Assault and Battery

Officer Corral moves for summary judgment on Williams's state-law claims for assault and battery based on official immunity.  (Docket Entry No. 58 at 18–20).  Under Texas law, official immunity is an affirmative defense that can be raised by a government official who has been sued in his or her individual capacity.  *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843 (Tex. 2007); *see also Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 742 (S.D. Tex. 2016).  State actors have official immunity while performing discretionary duties within the scope of their authority, so long as they act in good faith.  *Crostley v. Larmer Cty.*, 717 F.3d 410, 424 (5th Cir. 2013) (citing *Telthorster v. Tennell*, 92 S.W.3d 457, 460–61 (Tex. 2002)).  Police officers are exercising discretion when performing their duties.  *Carter*, 175 F. Supp. 3d at 742.  An officer acts in good faith if a reasonably prudent officer, under the same or similar circumstances, "could have believed that his conduct was lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred."  *City of Lancaster v. Chambers*, 883

S.W.2d 650, 656 (Tex. 1994); *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 320 (Tex. 2007); *see also Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012).

The factual disputes material to determining the objective reasonableness of the force Office Corral used are also material to determining whether Office Corral acted in good faith under the Texas "reasonably prudent officer" standard. *Chambers*, 883 S.W.2d at 656; *Ytuarte*, 229 S.W.3d at 320. Officer Corral's summary judgment motion based on official immunity must also be denied. *See Crostley*, 717 F.3d at 424 (the "Texas law of official immunity is substantially the same as the federal qualified immunity"); *Newman*, 703 F.3d at 764 ("Texas's good-faith test is one of objective legal reasonableness," and "[b]ecause the officer's use of force was not objectively reasonable, it was not in good faith").

### C.    Malicious Prosecution

Williams alleges that Officer Corral violated the Fourth Amendment because he was charged for harassing a public servant based on Officer Corral's report. Williams contends that the charge lacked probable cause. (Docket Entry No. 20 at 5). Officer Corral moves for summary judgment based on qualified immunity. (Docket Entry No. 58).

In *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003), the Fifth Circuit held that "'malicious prosecution' standing alone is no violation of the United States Constitution," requiring the plaintiff to point to a specific constitutional violation. *Id*. at 942. Even assuming that Williams's claim is based on allegations of false arrest or false detention before the District Attorney dismissed the charge against him, Williams must overcome Officer Corral's qualified immunity by showing that Officer Corral could not have reasonably believed that there was probable cause to arrest Williams for any crime. *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F. 3d 808, 813 (5th Cir. 2010). "Probable cause exists when the totality of the facts and circumstances within

22

a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."   *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006).   When "facts supporting an arrest are placed before an independent intermediary[,] such as a . . . grand jury, the intermediary's decision breaks the chain of the causation" and insulates the initiating party.   *Shields v. Twiss*, 39 F.3d 142, 150 (5th Cir. 2004) (quotation omitted).

The grand-jury indictment against Williams establishes probable cause, unless he can show that the grand jury's deliberations were in some way 'tainted" by Officer Corral.   *Manuel v. City of Joliet*, 137 S. Ct. 911, 919–20 & n.8 (2017); *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975); *Cuadra*, 626 F.3d at 813.   Williams's amended complaint alleges that the "charge of harassment of a public servant was without probable cause and [was] the result of false reporting by Officer Corral."   (Docket Entry No. 20 at 5, Docket Entry No. 65, at 9).   But Williams fails to point to any false statement that Officer Corral made before the grand jury.   Contrary to Williams's assertion, at least three witnesses testified that Williams spat on the police officers and resisted the arrest and the blood test.   (Docket Entry No. 58, Exs. F, G, H, K).   There is no factual dispute material to finding that probable cause supported the charge against Williams.   Summary judgment is granted for Officer Corral on the malicious-prosecution claim.

## V.     The Claims Against the City

William alleges that the City of Houston: (1) had a custom, policy, or practice of encouraging police officers to use excessive force against detainees and prisoners in violation of the Fourth and Fourteenth Amendments; (2) knew of the custom, policy, and practice, but failed to train or discipline the police officers who used excessive force; and (3) ratified Officer Corral's

23

action by failing to discipline him following his use of excessive force.  (Docket Entry No. 20, at 5–6).

### A.    Unconstitutional Policy, Practice, or Custom

Municipal liability requires proof of an underlying constitutional violation and three additional elements: (1) a policymaker; (2) an official policy; (3) and that the policy was the "moving force" of the constitutional violation.  *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009); *Salazar-Limon v. City of Houston*, 97 F. Supp. 3d 898, 910 (S.D. Tex. 2015) (quoting *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005)).  Official policy may be found in "written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy."  *Peterson*, 588 F. 3d at 847; *Piotrowski v. City of Houston*, 237 F.3d 567, 581–82 (5th Cir. 2001).

An official policy must be unconstitutional or have been adopted "with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).  "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Bd. of. Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997).  "A showing of simple or even heightened negligence will not suffice."  *Id.* at 407.  Instead, it "must amount to an intentional choice, not merely an unintentionally negligent oversight."  *James*, 557 F.3d at 617–18 (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992)).  To establish deliberate indifference, "usually a plaintiff must show a pattern of similar violations, and in the case of an excessive force claim, as here, the

prior act must have involved injury to a third party." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317–18 (5th Cir. 2018) (quoting *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010)).

Williams contends that over the last 13 years, Houston Police Department officers have injured or killed 250 individuals with firearms, but there has been no disciplinary action or finding of misconduct by the shooting officers. (Docket Entry No. 20 at 4). William's contention does not specify, or submit evidence showing, that any of these instances is comparable to Officer Corral's action or occurred in comparable circumstances he faced. *See Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) ("Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.").

Williams provided ten videotaped clips allegedly showing that Houston police officers used excessive force against three arrestees, Akrem Azzam, Charles Chukwu, and Trenton Garrett. (Docket Entry No. 65, Ex. 5). These videotapes fail to raise a factual dispute material to finding a well-settled City custom or practice. They are short excerpts that do not identify or explain why Azzam, Chukwu, and Garrett were arrested, whether they were indicted, or the circumstances of the police officers' use of force. These videos do not involve arrestees or prisoners who resisted arrest and a blood draw, or who spat at police officers. *See Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 659–60 (N.D. Tex. 2018) (dissimilar prior incidents cannot raise a factual dispute material to finding a pattern of constitutional violations).

Williams's argument also fails because the incidents he listed did not "have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected [and] accepted practice of city employees." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1983) (en banc). In *Peterson*

*v. City of Fort Worth*, 588 F.3d 838, 851–52 (5th Cir. 2009), the Fifth Circuit held that 27 complaints of police officers' allegedly excessive use of force filed over 3 years were insufficient to show a pattern of excessive force.  The three instances that Williams has identified, most involving different circumstances, cannot raise a factual dispute material to finding a "common and well-settled . . . custom that fairly represents municipal policy."  *Piotrowski*, 237 F.3d at 579; *Peterson*, 588 F.3d at 851; *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989); *see also Franklin*, 2012 WL 2715694, at *15.

In response to the City's summary judgment motion, Williams identified additional incidents allegedly involving Houston police officers' uses of excessive force.  The list includes:

- a June 2008 incident involving an arrestee who was allegedly struck several times by a Houston police officer while handcuffed;

- a February 2009 incident involving an arrestee who was allegedly struck on his head by the City of Houston jailers;

- an August 2009 incident involving a suspect who was allegedly shot and killed by a Houston police officer;

- an August 2009 incident involving an arrestee who was allegedly assaulted by a Houston police officer when she complained about how she was searched;

- a March 2010 incident involving a man who was allegedly beaten by several police officers while he was entering a restaurant; and

- a spring 2010 incident involving a suspect who was allegedly struck by a Houston police squad car and then beaten by the police officer.

(Docket Entry No. 65 at 22).  Williams fails to provide summary judgment evidence showing details of these incidents or to explain how they are comparable to Officer Corral's use of force against Williams.  *See, e.g.*, *Flores v Harris*, No. H-17-3817, 2019 WL 1426313, at *25 (S.D. Tex. Mar. 29, 2019) (the plaintiff's list of incidents failed to show that they involved similar uses of force comparable to the case at issue); *Oporto v. City of El Paso*, No. EP-10-cv-110-KC, 2012 WL

2191698, at *5 (W.D. Tex. June 14, 2012) (rejecting as evidence of a well-established pattern 32 purportedly similar incidents of police misconduct over 15 years).

Williams also fails to submit or identify evidence showing that the City's alleged practice or custom was the "moving force" of these other officers' allegedly excessive uses of force. *Salazar-Limon*, 97 F. Supp. 3d at 910; *James*, 577 F.3d at 617.   For example, Williams alleged that in Spring 2010, a Houston police squad car purposefully struck a suspect and the officer then beat the suspect.  The suspect sued.  Relying on the suspect's complaint, Williams argues that the City's policy or custom was the moving force of the police officers' use of excessive force, but the district court granted summary judgment on the suspect's municipal-liability claims.   *Holley v. Bloomberg*, 142 F. Supp. 3d 517 (S.D. Tex. 2015).

Williams's amended complaint does not identify a written policy or ordinance that encouraged excessive force by police officers.  (Docket Entry No. 20).  In his response to the City's summary judgment motion, Williams points to the City's General Order 600-17 Use of Force, contending for the first time that the Order fails to "define the important legal standard of 'reasonably necessary' force" and does not provide a penalty to enforce it.  (Docket Entry No. 65 at 19).   Even if Williams's argument is considered, the Order need not give a definition of "reasonably necessary force" to be constitutional.   Whether a police officer used objectively reasonable force turns on the totality of facts and circumstances of each incident.  The test cannot be reduced to a precise definition or formula. *See Brosseau v. Haugen*, 543 U.S. 194, 201 (2004); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008).  Williams's argument also fails because he does not name a policymaker or point to evidence showing that the General Order was adopted with deliberate indifference to a constitutional violation.  *See Blomberg*, 142 F. Supp. 3d at 524.

In sum, Williams fails to point to evidence of prior incidents that could show a pattern of the City's constitutional violations. Neither has he named a policymaker who adopted a policy allowing excessive force with deliberate indifference. The City's motion for summary judgment on Williams's claim of an allegedly unconstitutional custom, policy, or practice is granted.

### B.     The Claim of the City's Failure to Train or Supervise

Williams alleges that the City failed to train or discipline officers, including Officer Corral, who used excessive force in violation of the arrestees' and pretrial detainees' constitutional rights. To prevail on a § 1983 claim for failure to train or supervise against the municipality, Williams must establish that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Perniciaro v. Lea*, 901 F.3d 241, 259 (5th Cir. 2017) (quoting *Estate of Davis ex rel. McCully*, 406 F.3d at 381). Municipal liability does not attach merely because "a particular officer may be unsatisfactorily trained," or "an otherwise sound program has occasionally been negligently administered." *City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989). To demonstrate deliberate indifference in the context of a failure-to-train claim, a pattern of similar constitutional violations by untrained employees is "ordinarily necessary." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Generally, a plaintiff must show that "in light of the duties assigned to specific officers or employees[,] the need for more or different training is obvious, and the inadequacy is likely to result in the violation of constitutional rights." *Harris*, 489 U.S. at 390.

The City's summary judgment evidence shows that Officer Corral graduated from the Houston Police Academy and received his certification from the Texas Commission on Law Enforcement Officer Standards and Education. (Docket Entry No. 54-4). "[W]hen officers have

28

received training required by Texas law, the plaintiff must show that the legal minimum of training was inadequate." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); *see also O'Neal v. City of San Antonio*, 344 F. App'x 885, 888 (5th Cir. 2009) ("[I]f the training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that this legal minimum of training was inadequate to enable [the officers] to deal with the usual and recurring situations faced by jailers and peace officers."). Williams does not identify evidence raising a factual dispute that the City's training program violated Texas law or was otherwise inadequate. The Houston Police Department rules and regulations require that "[e]mployees' behavior shall be limited to conduct that is reasonable and prudent," and that "[e]mployees are expected to exercise sound judgment at all times." (Docket Entry No. 54-3). As discussed earlier, Williams's allegations and his summary judgment evidence are not enough to show a prior pattern of similar violations or that a "highly predictable consequence of a failure to train would result in the specific injury suffered." *Hobart v. Estrada*, 582 F. App'x 348, 357 (5th Cir. 2014); *see also Staten v. Adams*, 939 F. Supp. 2d 715, 735–36 (S.D. Tex. 2015).

To support a claim that a municipality failed to supervise or discipline a police officer accused of excessive force, a plaintiff must show "(1) a particular supervisor who failed to supervise the subordinate official; (2) a causal link between the failure to supervise and the violation of the plaintiff's constitutional rights; and (3) the failure to supervise was . . . with deliberate indifference to the risk of a constitutional violation." *Munroe v. City of Austin*, 300 F. Supp. 3d 915, 930 (W.D. Tex. 2018) (citing *Estate of Davis ex rel. McCully*, 406 F.3d at 381)).

Williams has not identified evidence showing that Officer Corral was not properly disciplined after the incident. Contrary to Williams's assertion, the City's summary judgement evidence shows that the City investigated the incident, found that Officer Corral failed to comply

with the Police Department's regulations, and ordered him to attend counseling.   (*Id*. at 2).
Williams's disagreement with the City's disciplinary decision does not raise a factual dispute as
to deliberate indifference.   Summary judgment is granted on Williams's claim for failure to train
or supervise.

### C.    Ratification

Williams argues that the City is liable because it ratified Officer Corral's conduct by failing
to discipline him.   A municipality may be held liable under a ratification theory "[i]f the authorized
policymaker approves a subordinate's decision and the basis for it."   *City of St. Louis v. Praprotnik*,
485 U.S. 112, 128 (2017).   The Fifth Circuit has limited ratification to "extreme factual situations,"
to avoid *respondeat superior*.   *Peterson*, 588 F.3d at 848; *see also Pinder v. Skero*, No. 16-cv-
3479, 2019 WL 1301759, at *15 (S.D. Tex. Mar. 21, 2019).   A "policymaker[] who simply go[es]
along with a subordinate's decision do not . . . vest final policymaking authority in the subordinate,
nor does a mere failure to investigate the basis of a subordinate's discretionary decisions amount
to such a delegation."   *Milam v. City of San Antonio*, 113 F. App'x 622, 627 (5th Cir. 2004)
(quotation omitted).   Williams's allegation that the City did not sufficiently discipline Officer
Corral does not raise a factual dispute as to ratification.   *See Peterson*, 588 F.3d at 848.

Williams also argues that Officer Corral's fellow officers and supervisors were "in a
concerted effort to suppress the evidence against" Officer Corral.   (Docket Entry No. 65 at 24).
Williams contends that during the Houston Police Department's internal investigation, Officer
Little omitted to mention that Officer Corral used a chokehold; Officer McRae made contradictory
statements as to whether Williams fell to the floor; and Officer Matthews said that he saw Williams
resisted at the hallway and refused to return to the holding cell.   (*Id*.).   Williams's argument shows
the disputes over some of the police officers' testimony about the details of the incident.   While

those disputes defeat summary judgment as to Officer Corral's liability and qualified immunity, they are not enough to support Williams's speculation that the officers conspired to suppress evidence favorable to him.  *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) ("Good faith statements made in defending complaints against municipal employees do not demonstrate ratification.").  To the contrary, the City and Officer Corral have produced videotape recordings of the events at issue.  There is no basis to infer an effort to suppress evidence.

## VI.    Conclusion

Summary judgment is granted for the City on Williams's municipal-liability claims. (Docket Entry No. 54).  Officer Corral's summary judgment motion is granted as to Williams's malicious-prosecution claim and denied as to Williams's Fourth and Fourteenth Amendment claims based on excessive use of force and as to the state-law claims for assault and battery. (Docket Entry No. 58).  A status and scheduling conference is set for **July 12, 2019**, at 8:30 a.m. in Courtroom 11-B.

SIGNED on June 11, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge